## Mingo Lime & Lumber Co. v. Stanley et al.

(Decided Feb. 8, 1935.)

W. W. BARRETT and J. C. CANTRELL for appellant.

CHILDERS & BOWLES, T. L. CREEKMORE and JOHNSON & HINTON for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The Mingo Lime & Lumber Company, a West Virginia corporation (hereinafter called the lumber company), asserted a lien under section 2463, Ky. Stats., upon certain property in Stone, Ky., owned by J. E. Stanley, for a balance of $552.31 claimed to be due the lumber company for materials and supplies used in erecting a building on the property. Its petition was dismissed, and it has appealed. The lumber company began, so it contends, to furnish these materials on October 4, 1929, and has furnished $2,633.63 worth, but says it was paid in full for all materials furnished previous to December 1, 1929, which Stanley does not dispute, so we have before us no dispute about that, and are only concerned with materials furnished thereafter.

The furnishing by the lumber company of the materials for the erection of this building is not questioned, but Stanley disputes its right to claim a lien therefor because, as he says, a notice of intention to claim a lien therefor was not given him within 35 days after the last of the materials was furnished as required, so he contends, by section 2463, Ky. Stats.

The last materials were furnished January 29, 1930, and statement for a lien was filed in county clerk's office April 30, 1930, which was 91 days thereafter, and was in ample time to create a lien on the property under section 2468, Ky. Stats., unless a notice to Stanley within 35 days was necessary, and that depends upon whether the contract for the furnishing of these materials was made directly with Stanley or his agent, or was made with Hunt, the contractor, acting for himself and not for Stanley, for, if the contract was made with Stanley, for these materials to be shipped as and when ordered by Hunt, then Hunt in ordering them was doing so as the agent of Stanley, and the provision of section 2463, Ky. Stats., as to notice within 35 days does not apply.

## Was Contract Made Directly with Stanley?

The lumber company pleads that it was, and Stanley denies that. Stanley admits that he and his contractor, Hunt, visited the plant of the lumber company and looked over their stock of materials and priced them, but says they did not buy any. The general manager of the lumber company testified thus:

"Arrangements were made with Mr. Stanley that materials were to be charged to him and Archie Hunt, and he requested invoices to be sent to J. E. Stanley, Pikeville, Ky. Payment was to be made direct to us by Mr. Stanley. At this time Mr. Stanley and Mr. Hunt inspected the different kinds of materials and arranged for the furnishing of these materials as needed on the job by Mr. Hunt, who was on the job, Mr. Stanley being in Pikeville most of the time. * * * We sold and delivered materials beginning October 4th, 1929, and from time to time thereafter to January 29th, 1930 as needed as the work progressed and as ordered out by Mr. Hunt and at times by Mr. Stanley. Practically all of these materials were delivered by our trucks direct to the building near the First National Bank, Stone, Ky., sand and brick being shipped in car lots to Stone, Ky. * * * Invoices were made up after shipment was made, after sales sheets had been priced and checked, which usually is within one or two days from date of sale. One copy of all invoices was mailed to J. E. Stanley at Pikeville, Ky."

Mr. Hunt testified he was with Mr. Stanley at the time they visited the plant of the lumber company, and the arrangements were made then for the furnishing of these materials; that it was then arranged that Mr. Stanley was to pay the lumber company for them, that he (Hunt) was then told by Stanley to order these materials as he needed them; that he did order them and used them in the erection of the building; and that he had examined the account and it is correct.

Stanley made payments to the lumber company from time to time; Hunt made no payments, but did deliver some of Stanley's checks to the lumber company. The payments made are $112, $429.31, $858.19, and $600. Stanley made all of these. The balance sued for is $552.31. Both parties agree that Stanley called the lumber company by telephone, and directed that it furnish no more materials to Hunt unless Stanley should order them himself. He is not very definite just when this was done. The lumber company admits receiving such instruction, and says it did not furnish a thing after that. Stanley says they did furnish tables, shelving, and other things after that amounting to as much as $600. The account between the lumber

company and Stanley was settled up to December 1, 1929, and we have examined the account since that time and we find no charges for tables, shelving, or materials out of which such could be constructed. On February 20, 1930, Stanley wrote a letter to the lumber company in which he said he would be over at the first of the month and settle with it. We will not be amiss if we construe this contract as the parties did. If this were a contract not made with Stanley, he would have no right to order the lumber company to stop furnishing materials under it, and the lumber company would not have to observe such notice, yet both of them treated it as a contract with Stanley and that Stanley had the right to stop the delivery of materials under it. Stanley's son testified he was present when his father told the manager of the lumber company that, if it shipped any more material to Hunt, he would not pay for it. In view of this, we are compelled to conclude these materials were furnished on a contract made directly with Stanley.

### Were Materials Diverted?

Stanley had some proof that Hunt did not use all of these materials in this building and that some of them were sold to other parties.

There is some evidence that some small quantities of cement and brick were sold. No lien is being asserted for any brick or cement. All of that was delivered previous to December 1, 1929, and, as we have stated, Mr. Stanley settled everything in full to that date and no attack has been made on that settlement. There was some evidence that Will Trout got $15 worth of paint which had come from the Mingo Lime & Lumber Company, but there is no evidence identifying it as a part of the paint that had been shipped there to go in Mr. Stanley's building; hence we find this claim of diversion is not established as to any materials for which lien is asserted.

The court erred in not awarding the lumber company a personal judgment against Mr. Stanley for $552.31, with interest from March 1, 1930, and in not adjudging to it a lien to secure it and its cost.

### Issues Yet to be Heard.

The building upon which this lien was asserted

was destroyed by fire while this litigation was pending, and by agreement $700 of the insurance recovered was sequestered. Concerning this there were issues made between the lumber company and O. F. Payne, receiver of the First National Bank of Stone, Ky. Apparently because notice was not given Stanley within 35 days after January 29, 1930, the trial court dismissed the lumber company's petition without passing on these issues between it and the receiver.

Judgments reversed, with direction to set them aside in so far as they conflict with this opinion and to enter judgment in conformity herewith and to determine then the issue between the lumber company and the receiver.